UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN JAMES RAPINOE, BOOKING #20944775, <br><br>Plaintiff, <br><br>vs. <br><br>SAN DIEGO COUNTY SHERIFF'S OFFICE, DOCTOR MONTGOMERY, DOCTOR RAFFI and DOCTOR ARCY, <br><br>Defendants. | Case No.: 21cv1162-DMS (RBM) <br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)** |

Plaintiff Brian James Rapinoe, incarcerated at the Vista Detention Facility in Vista, California, is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff claims he has been denied proper medical care because his knee injury was not properly evaluated, his inmate grievances were not properly handled, and the San Diego Sheriff's Office has implemented a no-narcotics policy which prevents doctors from providing proper medical care where narcotic pain medication is required. (*See id.* at 2-5.) Plaintiff did not prepay the civil filing fee required by 28 U.S.C. Section 1914(a) at the time of filing and has instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. Section 1915(a). (ECF No. 2.)

**I.    Motion to Proceed In Forma Pauperis**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to prepay the entire fee only if leave to proceed in forma pauperis ("IFP") is granted pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1) &(4). The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2). Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed. *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Plaintiff's prison certificate shows he had an average monthly balance of $0.83 and average monthly deposits of $70.00 for the 6-months preceding the filing of this action, and an available balance of $5.00. (ECF No. 2 at 4.)

The Court **GRANTS** Plaintiff's Motion to Proceed IFP and declines to impose an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1) because his prison certificate

---

[1] In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

indicates he may have "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.") Instead, the Court directs the Secretary of the CDCR, or her designee, to collect the entire $350 balance of the filing fee required by 28 U.S.C. § 1914 and to forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II. Screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. Plaintiff's Allegations

In his first cause of action, Plaintiff alleges that on January 1, 2017, the Administrative and Medical Department of the San Diego Sheriff's Office "implemented a policy dictating a primary care physician mode of treatment in the use of narcotic pain medication." (ECF No. 1 at 3.) He contends the policy provides that every San Diego Sheriff's facility is a non-narcotic facility, and therefore every inmate, even before being seen by a doctor, is already denied proper medical care to the extent narcotic medication is medically necessary. (*Id*.) Plaintiff states that as a result he has been denied adequate medical care at every San Diego Sheriff's facility he has been housed in since 2017 which "resulted in a further sustained injury during my stay in Pelican Bay State Prison." (*Id*.)

He contends he was transferred to the custody of the San Diego Sheriff in November 2020 due to the Covid-19 pandemic, and "in place of my correct pain medication I am instead given high doses of Tylenol & Motrin which exacerbates a pre-existing condition of Hepatitis-C." (*Id*.) Plaintiff does not identify his "correct pain medication," but describes his medical condition as involving an ACL tear, an ACL separation, a lateral meniscus tear and advanced osteoarthritis, which requires him to use a cane with a risk of sudden extremely painful knee dislocations. (*Id*. at 4.) He contends that even with his well-documented medical history, the San Diego Sheriff's Office policy "caused" Defendant Chief Medical Officer Dr. Montgomery to order Defendants primary care physicians Dr. Raffi and Dr. Arcy to "disregard" that documentation, resulting in constant pain arising from gross negligence and cruel and unusual punishment. (*Id*. at 2-4.)

The second cause of action in the Complaint alleges that Plaintiff has submitted numerous inmate grievances regarding the non-narcotic policy and the lack of proper medical treatment and has spoken to officers to mediate his dispute. (*Id*. at 5.) He claims that his grievance forms have been altered to be received as requests, thereby denying him his right to the inmate grievance procedures. (*Id*.)

In the third and final cause of action, Plaintiff alleges Defendant Dr. Raffi and Dr. Brown, who is not a named Defendant, have never evaluated his knee in an office setting, but instead came to the door of his housing unit for a visual inspection while Plaintiff was surrounded by other inmates and expected to discuss his medical needs. (*Id*. at 6.) He also states that "they have directed the nursing staff to try and catch me cheeking my psychotropic medication Wellbutrin so as to discontinue it." (*Id*.)

Plaintiff claims he was denied adequate medical care, subjected to cruel and unusual punishment, denied due process, received negligent medical care, and had his right to patient confidentiality breached. (*Id*. at 3-6.) He seeks an injunction preventing the San Diego Sheriff's Office from directing how physicians treat their incarcerated patients, for surgery to repair any injuries sustained as a result of the lack of proper medical care, as well as compensatory and punitive damages. (*Id*. at 8.)

## C. Analysis

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014), quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id*., quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.,* quoting *Wilson*, 501 U.S. at 302-03. A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

With respect to the first cause of action, there are no factual allegations in the Complaint from which a plausible inference can be drawn that any named Defendant was aware that without a narcotic drug Plaintiff faced an excessive risk to his health or safety, and, knowing of that risk, deliberately disregarded it. Taken in the light most favorable to Plaintiff, he alleges he is receiving improper medical care because the pain medication he currently receives, Tylenol and Motrin, presents a risk to his liver because he has Hepatitis-C, but he does not allege that a narcotic pain medication presents a lesser risk, or that any doctor has or would prescribe a narcotic pain medication if they were permitted to do so. The Complaint contains no allegation that Plaintiff has in the past or should now be prescribed a narcotic drug. Rather, as currently drafted, the Complaint merely alleges that the no-narcotics policy prevents treating physicians from providing proper medical care

whenever a narcotic drug is medically necessary, that he is currently at risk for painful knee dislocations, and "in place of my correct pain medication I am instead given high doses of Tylenol & Motrin which exacerbates a pre-existing condition of Hepatitis-C." (ECF No. 1 at 3.) It is unclear whether Plaintiff contends his "correct pain medication" is a narcotic which he should be receiving, or whether he anticipates a future knee dislocation where he may need to be prescribed a narcotic. In any case, Plaintiff does not allege his treating doctors would have prescribed him narcotics but for the policy, or that they are aware he has a serious medical need for narcotic medication and have been deliberately indifferent to that need. *See Farmer*, 511 U.S. at 837 (holding that a prison official can be held liable only if he or she is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference."); *Iqbal*, 556 U.S. at 678 (the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of stating a § 1983 claim). Although Plaintiff may have intended to allege he has a serious medical need for narcotic pain medication he is not receiving due to a no-narcotics policy, he has not done so in the Complaint as currently drafted. While the court has an "obligation . . . where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc), it may not, in so doing, "supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Even were the Court to liberally construe the Complaint as alleging Plaintiff has a serious medical need for narcotic pain medication and is not receiving it due to the no-narcotics policy, there remains an absence of factual allegations which plausibly allege that any Defendant became aware of, or should have become aware of, Plaintiff's serious medical need for a narcotic drug but made a decision not to prescribe narcotic medication based on deliberate indifference to that serious medical need rather than simply a disagreement over the appropriate course of medical care. *See Estelle*, 429 U.S. at 105-07

(inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to (the prisoner's) health.") (internal quote marks omitted). Although Plaintiff alleges the no-narcotics policy "caused" Defendant Chief Medical Officer Dr. Montgomery to order Defendants primary care physicians Drs. Raffi and Arcy to "disregard" information in his medical file (ECF No. 1 at 4), there are no specific allegations in the Complaint regarding what information Plaintiff refers to or whether that information would have required a treating physician to prescribe narcotic pain medication. This "unadorned, the defendant-unlawfully-harmed me accusation" falls short of meeting the plausibility pleading standard, as "mere conclusory statements, do not suffice" to state a § 1983 claim. *Iqbal*, 556 U.S. at 678.

In order to cure the pleading defect against Defendants Drs. Montgomery, Raffi and Arcy, Plaintiff must set forth factual allegations which plausibly suggest one or more of the doctor Defendants determined or should have determined that prescribing a narcotic drug would be the medically necessary course of treatment needed to prevent a serious risk of harm to Plaintiff due to his medical condition but demonstrated a conscious disregard of an excessive risk to his health by deliberately disregarding that risk in failing to prescribe appropriate medication. *Farmer*, 511 U.S. at 844. Plaintiff's failure to present factual allegations which, if true, plausibly show he would have been prescribed narcotic medication but for the no-narcotics policy, also fails to state a claim against Defendant San Diego Sheriff's Office. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (holding that in order to state a claim for municipal liability, there must be a "direct causal link" between the municipal policy and the alleged constitutional violation); *see also Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc) ("It is not sufficient

for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights' [of the plaintiff]."), quoting *City of Canton*, 489 U.S. at 392.

The Court notes that it is not entirely clear from the face of the Complaint whether Plaintiff was a pre-trial detainee at the time of the events or whether he was transferred to the custody of the San Diego County Sheriff's office to serve a term of incarceration as a state prisoner. (*See* ECF No. 1 at 3-4.) If he was a pre-trial detainee at the time of the events alleged in the Complaint, then an objective test under the Fourteenth Amendment rather than a subjective Eighth Amendment analysis applies. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that "the Due Process Clause [of the Fifth Amendment] rather than the Eighth Amendment" is applicable to claims of pre-trial detainees because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.") Unlike the Eighth Amendment requirement that Defendants were aware of Plaintiff's need for a narcotic drug, the objective standard requires Plaintiff to allege "more than negligence but less than subjective intent - something akin to reckless disregard." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Even under an objective standard, however, allegations of negligence or accident are insufficient to state a claim. *Kinglsey v. Hendrickson*, 576 U.S 389, 396 (2015); *Daniels v. Williams*, 474 U.S. 327, 331-32 (1986) (negligence does not violate due process even if it causes injury). Plaintiff's failure to allege he had an objectively serious need for a narcotic drug, and his failure to allege he was examined by a Defendant who was deliberately indifferent or showed a reckless disregard to that need by failing to prescribe a narcotic drug, as opposed to a disagreement over the appropriate course of medical treatment, fails to state a § 1983 claim under either standard.

Plaintiff alleges in his second count that his right to utilize inmate grievance procedures was denied because his submissions were improperly treated as requests rather than grievances. (ECF No. 1 at 5.) There is no independent constitutional right to an

inmate administrative appeal or grievance system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."), citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a [state prison] grievance procedure."); *see also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (noting that although prisoners have federal constitutional rights to petition the government for redress of grievances and of access to the courts, those rights are "not compromised by the prison's refusal to entertain his grievance.") Thus, with respect to the allegations against the Defendants based on their role in the processing of Plaintiff's CDCR-602 Inmate Appeals, the Complaint fails to state a claim because there is no constitutional requirement regarding how a grievance system is operated. *Ramirez*, 334 F.3d at 860; *Mann*, 855 F.2d at 640; *see also Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (identification of a constitutionally protected interest is required to state a due process claim), citing *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Finally, Plaintiff alleges in count three that Dr. Brown and Defendant Dr. Raffi have never evaluated his knee in an office setting, but instead came to the door of his housing unit for a visual inspection while Plaintiff was surrounded by other inmates and expected to discuss his medical needs. (ECF No. 1 at 6.) Plaintiff's allegation that he was examined under less than ideal circumstances does not state a claim for denial of medical care, as there are no allegations that the failure to conduct the examination in an office rather than in the holding cell amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 105-07 (an inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim); *Gordon*, 888 F.3d at 1124 (a "mere lack of due care by a state official" is insufficient to state a constitutional claim for lack of medical care by a pretrial detainee).

Accordingly, the Court *sua sponte* dismisses all claims in the Complaint against all Defendants based on a failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) &

§ 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121. To the extent Plaintiff seeks to bring claims under state law, for negligence, medical malpractice, or breach of medical confidentiality for example, the Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *Sanford v. Member Works, Inc*., 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") Because the Court has dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims raised in the Complaint at this time.

### D.     Leave to Amend

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim against the dismissed Defendants if he can and if he wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## III.    Conclusion and Orders

Good cause appearing, the Court:

1.     **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2.     **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2). All payments should be clearly identified by the name and number assigned to this action.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4. **DISMISSES** all claims against all Defendants in the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

5. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order with respect to any or all other Defendants. Plaintiff's First Amended Complaint must be clearly entitled "First Amended Complaint," include Civil Case No. 21cv1162-DMS (RBM) in its caption and must be complete by itself without reference to his original Complaint. Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

6. **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for his use in amending should he choose to do so.

**IT IS SO ORDERED.**

Dated: July 15, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court